UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DARREN LAMONT McCOY,<br>Defendant. | Case No. 2:11-cr-00438-MMD-CWH<br><br>ORDER |

**I.   INTRODUCTION**

In a previous Order, the Court resolved one ground (count two) raised in defendant Darren Lamont McCoy's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("Motion"), and set an evidentiary hearing on the remaining ground (count one). (ECF No. 126.) The Court held the evidentiary hearing on August 12, 2015. (ECF No. 201.) The parties filed post-hearing briefs. (ECF Nos. 216, 217.) The Court has considered the testimonies and evidence presented at the evidentiary hearing and has reviewed the parties' briefs. The Court finds that McCoy has not demonstrated that his counsel was ineffective in representing him in the plea negotiations in this case. Accordingly, the Court will deny the Motion with respect to the remaining ground.

**II.   RELEVANT BACKGROUND**

**A.   Procedural History**

On December 14, 2011, the Grand Jury indicted McCoy on one count of felon in possession of a firearm. (ECF No. 1.) On July 3, 2012, the Grand Jury returned a

Superseding Criminal Indictment charging McCoy with six counts, including one count of felon in possession of a firearm, two counts of interference with commerce by robbery and two counts of possession of a firearm during, in relation to, and in furtherance of a crime of violence. (ECF No. 45.) The Superseding Criminal Indictment alleges that McCoy was involved in two robberies—one of a Pizza Hut and another of a Subway—on November 17, 2011. (*Id.*)

On July 6, 2012, at a hearing on pending motions, McCoy's counsel represented that the parties were in the process of negotiating a plea and counsel would refile the motion to suppress within one week if plea negotiations were unsuccessful. (ECF No. 53.) The plea negotiation was unsuccessful and on July 20, 2012, the Magistrate Judge heard argument on McCoy's motion to suppress (ECF No. 57). The Magistrate Judge subsequently issued a Report and Recommendation recommending that McCoy's motion to suppress be denied. (ECF No. 61.)

On September 24, 2012, shortly before the scheduled trial, the parties entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (C) ("Plea Agreement"). (ECF No. 83.) McCoy changed his plea to Counts 5 and 6 of the Superseding Indictment and the Court accepted his guilty plea on September 24, 2012.[1] (ECF Nos. 83, 84.) After two hearings, the Court accepted the terms of the binding Plea Agreement and sentenced McCoy to a total sentence of three hundred (300) months on Counts 5 and 6. (ECF Nos. 89, 93, 96.)

Following his unsuccessful direct appeal, McCoy filed the Motion, asserting two grounds for relief. (ECF No. 119.) The Court rejected count two—defective sentencing procedure—and set an evidentiary hearing to resolve count one—ineffective assistance of counsel in plea negotiations. (ECF No. 126.)

///

---

[1]Count 5 charges McCoy with interference with commerce by robbery in violation of 18 U.S.C. § 1951. (ECF No. 45.) Count 6 charges him with possession of a firearm during, in relation to, and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.*)

## B. Facts Pertinent to Ground Two

At the end of June 2012, the parties discussed a "global resolution" for McCoy to plead guilty to certain charges in his state court cases ("State Case") and the charge in this case ("Federal Case").[2] (ECF No. 213 at 24; Ex. 500.)[3] Counsel for McCoy, Saraliene Smith Durrett, had informed the government's counsel, Phillip Smith, that McCoy wanted a global resolution to resolve his State Case as well, although she did not represent him in the State Case.[4] (ECF No. 213 at 24.)

In an email to Ms. Durrett on July 5, 2012, Mr. Smith described the offer that the state prosecutor would accept in exchange for a guilty plea in two of the three state cases—agreement to "the large habitual and a total sentence of 10 [to] life for each case, to be served consecutively between the two cases, for a total sentence of 20 years." (Exh. 12.) As for the Federal Case, Mr. Smith agreed to accept a guilty plea to the felon in possession count and one count of robbery and a 20-year sentence in exchange for dismissal of the remaining four robbery counts with the sentence in the Federal Case to run concurrently with the sentence in the State Case. (*Id.*) According to Mr. Smith, the offer in the Federal Case was contingent on McCoy accepting the offer in the State Case. (*Id.* at 43-44.)

The next day, before the hearing on McCoy's motions, the government agreed to modify the offer from 20 years to 15 years. (ECF No. 213 at 18-19, 46-47, 54; ECF No. 110 at 23.) The government did not make the 15-year offer in the Federal Case contingent on McCoy accepting the offer in the State Case, which remained unchanged. (ECF No. 110 at 23.) However, Mr. Smith testified that he had contemplated that the offer in the

---

[2] Before the government decided to seek a superseding indictment to include other charges, the government presented a plea offer of an 8-year sentence in exchange for a guilty plea to one count of felon in possession of a firearm. (ECF No. 213 at 35-36; Exhs. 1 & 3.) McCoy rejected the offer. (ECF No. 213 at 35-36.)

[3] The exhibits referenced in this Order are exhibits admitted at the evidentiary hearing. The Court admitted the government's Exhibits 1-27 and McCoy's Exhibits 500, 501, 503, 504, 505, 507 and 508. (ECF No. 206.)

[4] Ms. Durrett apparently made repeated efforts to communicate with McCoy's counsel in the State Case relating to the state's plea offer. (*See* Exhs. 15, 16.)

Federal Case would have been contingent on McCoy accepting the offer in the State Case had the offer of 15-year in the Federal Case been reduced to writing. (ECF No. 213 at 44.) Ms. Durrett testified that Mr. Smith did not indicate that the 15-year offer was contingent on McCoy accepting the state offer, her understanding was the offers were not dependent on each other, and she was more concerned about trying to reduce the length of the sentence in the Federal Case. (ECF No. 213 at 57-58, 83, 86, 88.) She testified she did not inform McCoy that the 15-year offer was dependent on his acceptance of the offer in the State Case. (ECF No. 213 at 70-74, 78.) McCoy testified that Ms. Durrett told him the 15-year offer was a "joint deal" with the state. (*Id.* at 96.)

Ms. Durrett conveyed the government's offer of 15 years to McCoy and suggested that he take time to consider the offer and to agree to continue the hearing set for July 6, 2012.[5] (ECF No. 213 at 54-55, 57-59.) According to McCoy, the purpose of the continuance was to allow for negotiation with the state to resolve the State Case. (ECF No. 213 at 98-99.) McCoy had until July 13, 2012 to accept the government's offer in the Federal Case. (Exh. 16.)

Ms. Durrett testified she was having difficulty in getting McCoy to understand that he should accept the offer in the Federal Case by the July 13, 2012, deadline because she was concerned he was facing a potential sentence that would be significantly higher than the 15-year offer. (ECF No. 213 at 60-61.) According to Ms. Durrett, part of McCoy's

///

///

---

[5]According to McCoy, he agreed to the 15-year offer when it was presented to him and told Ms. Durrett that he wanted to accept the 15-year offer. (ECF No. 213 at 95.) However, Ms. Durrett testified that McCoy did not accept the offer when it was presented. (*Id.* at 87.) Ms. Durrett testified she did not recall telling Mr. Smith that McCoy would take the 15-year offer but only that "[w]e're considering it." (*Id.* at 85, 87.) Mr. Smith testified that McCoy rejected the 15-year offer on July 12, 2012. (*Id.* at 31, 45-46; Exh. 501.) In the recording of Ms. Durrett's July 12 telephone conversation with McCoy about his rejection of the 15-year offer, Ms. Durrett asked McCoy why "he changed his mind" because he had told her when they last talked that he would accept the deal. (Exh. 504.) Regardless of whether McCoy initially indicated that he wanted to accept the 15-year offer, there is no dispute that McCoy ultimately rejected the offer. (Exh. 504; Ex. 17.)

1 concern was he did not know how his State Case was going to be resolved because he
2 was not able to communicate with his attorney in the State Case.[6] (*Id.*)

On July 12, 2012, Ms. Durrett discussed the government's offer of 15 years with McCoy and recommended that he accept the offer. (Exh. 503 at ¶ 14; Exh. 504.) She also conveyed a message from McCoy's State Court counsel that McCoy should accept the state's offer, but she told McCoy she could not give him advice on the state offer because she did not represent him in the State Case and did not know enough about the State Case to give him advice. (*Id.*; ECF No. 213 at 63-64.) When McCoy indicated he was rejecting the government's 15-year offer because the state would not "budge," Ms. Durrett explained that State Case involved different proceedings over which they had no control. (*Id.*; ECF No. 213 at 70-71; Exh. 504.) McCoy indicated he understood. (Exh. 504.) Ms. Durrett reiterated the risks of proceedings in the Federal Case and the potential for a significantly higher sentence. (*Id.*) On July 13, 2012, in a meeting with McCoy, Ms. Durrett presented him with a letter wherein she recommended that he accept the government's offer of 15 years and again reiterated the risks involved in rejecting the offer. (Exh. 17.) McCoy testified that he rejected the offer of 15 years because he thought the state would not modify its offer and by rejecting the offer in the Federal Case, he was rejecting both. (ECF No*.* at 92, 110-111.)

On September 24, 2012, McCoy entered into a binding plea agreement, agreeing to a sentence of 25 years. (ECF No. 83.)

**III. DISCUSSION**

Count one alleges ineffective assistance of counsel in the plea negotiations in this case. (ECF No. 119 at 14-15.) McCoy contends that his trial counsel failed to effectively communicate the government's offer of 15 years, which resulted in his rejection of that offer and acceptance of a subsequent offer of 25 years.

---

[6]Ms. Durrett sent a letter dated July 10, 2012 to McCoy's State Court counsel in which she summarized the plea negotiations. (Exh. 16.) (The letter had the incorrect month of June when it should have been July (ECF No. 213 at 62).)

"[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970). The Supreme Court recently reaffirmed that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann*, 897 U.S. at 771)). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). The Ninth Circuit has stated that a defendant is also "entitled to the effective assistance of counsel in his decision whether and when to plead guilty." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). "If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *Id.* (citation omitted). "To prove ineffective assistance during the plea phase of a prosecution, a defendant 'must demonstrate gross error on the part of counsel.'" *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *McMann*, 397 U.S. at 771).

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges based on ineffective assistance of counsel. *See Lafler*, 132 S.Ct. at 1384. First, a defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In the context of plea negotiations, the question is "not whether 'counsel's advice was right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *Turner*, 281 F.3d at 880 (quoting *McMann,* 397 U.S. at 771). Second, a defendant must show that "any deficiencies in counsel's performance was prejudicial" by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691-92, 694. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt

///

6

counsel's perspective at the time of the challenged conduct in order to avoid the distorting effects of hindsight. *Id.* at 689.

As an initial matter, the Court must resolve a conflict in Ms. Durrett and McCoy's testimony about whether the 15-year offer as presented to McCoy was contingent on his acceptance of the offer in the State Case. Ms. Durrett testified that she did not tell McCoy this offer was contingent on his acceptance of the offer in the State Case. Ms. Durrett testified that she recommended that McCoy accept the 15-year offer, but McCoy was more concerned about how his State Case was going to be resolved. (ECF No. 213 at 70-74, 78.) By contrast, McCoy testified that he accepted the 15-year offer when it was first presented but that Ms. Durrett had asked him about his State Case and indicated that the 15-year offer was "a joint deal." (*Id.* at 96.) According to McCoy, it was Ms. Durrett who brought up the State Case, and she "always asked [him] about the state's deal" after he said he would accept the 15-year offer. (*Id.*) While it is understandable that the witnesses who testified at the evidentiary hearing do not have a clear recollection of the relevant discussions and events given the passage of time, the Court finds Ms. Durrett's testimony to be more credible.

Ms. Durrett's testimony is supported by other evidence. First, in an email dated July 10, 2012, to her employer at the time, Ms. Durrett expressed her concern about advising McCoy to accept the 15-year offer given the risk that if he were to proceed to trial he could be sentenced to up to 72 years. (Exh. 15; ECF No. 213 at 60-61.) In her email, she explained the terms of the offer in the State Case, the lack of any response from McCoy's state court counsel to her calls, and the upcoming deadline for McCoy to accept the 15-year offer. (Exh. 15.) She then wrote:, "**So my question is do I tell him to take 15 in federal court and let the state case sort itself out**."[7] (*Id.* (emphasis in original).) It is clear from this email that Ms. Durrett did not believe the 15-year offer was

---

[7] Ultimately, Ms. Durrett answered her own question in the affirmative: she advised McCoy to take the 15-year offer and to discuss the state's offer with his state court counsel.

7

contingent on McCoy's acceptance of the state's offer, which supports her testimony that she did not convey to McCoy that the offers were joint offers. Second, in a July 12, 2012, letter to McCoy's state court counsel, Ms. Durrett explained that McCoy was seeking his state court counsel's input before deciding whether to accept the state's offer, "but [McCoy] would like to reach a global resolution in all of his cases at the same time." (Exh. 16.) Ms. Durrett did not indicate that the federal offer was contingent on the state offer. Third, in a July 12, 2012, call with McCoy, Ms. Durrett told McCoy his state court counsel indicated he was going to recommend McCoy accept the state's offer and was waiting for a plea agreement before meeting with McCoy. (Exh. 504.) She recommended that McCoy accept the offer in the Federal Case, and asked him why he was changing his mind about accepting the 15-year offer. (*Id.*) When McCoy stated that it was because the state would not reduce its offer, Ms. Durrett explained that the state proceedings were different. (*Id.*) It was clear from this call that Ms. Durrett urged McCoy to accept the 15-year offer. If it wasn't clear enough that McCoy's acceptance of the 15-year offer had nothing to do with the state offer, Ms. Durrett explained the separate proceedings in state court.[8] (*Id.*) If, as McCoy contends, the federal offer was contingent upon the state offer, it would defy logic for Ms. Durrett to urge McCoy to accept the federal offer prior to consulting with his state court counsel about the state offer. Finally, the July 13, 2012, letter that Ms. Durrett wrote to McCoy informing him of the risks should he reject the government's offer of 15 years also made no reference to the State Case, let alone that McCoy could not accept the offer in the Federal Case without also accepting the offer in the State Case (as McCoy testified). (Exh. 17). Thus, to the extent there are discrepancies between McCoy's testimony and Ms. Durrett's testimony, the Court accepts Ms. Durrett's testimony that she did not inform McCoy the 15-year offer was a "joint deal" or that the federal offer was contingent on McCoy's acceptance of the offer from the state.

///

---

[8] McCoy testified he thought this meant that he would be sentenced separately. (ECF No. 213 at 99.)

8

Accepting Ms. Durrett's testimony as to her discussions with McCoy about the 15-year offer, the Court finds that McCoy cannot satisfy the first prong of the *Strickland* test. Ms. Durrett presented the government's offer of 15 years to McCoy, urged him to accept the offer, discussed her concerns about the risks of proceeding to trial, and warned McCoy about the potential of a significantly higher sentence in the Federal Case if he failed to accept the government's 15-year offer by the established deadline. (ECF No. 213 at 71-72.) In response to McCoy's concerns that the state was not going to "budge" on its offer and he would "still [do] 20 years" in the State Case, Ms. Durrett explained that they had no control over the State Case and that she could not give him advice as to the state offer. (Exh. 504.) In fact, Ms. Durrett pointed out that McCoy "may end up doing 40 or 60 years if he keeps going in federal court." (*Id.*; Exh. 503 at ¶ 14.) In sum, Ms. Durrett communicated the government's offer and discussed the pros and cons of not accepting the offer. The Court finds that Ms. Durrett clearly acted "within the range of competence demanded of attorneys in criminal cases" in her representation of McCoy. *See Turner*, 281 F.3d at 880.

Even accepting McCoy's testimony that he rejected the 15-year offer because he thought the offer in this case was a "joint deal" with the State Case, McCoy nevertheless cannot show that Ms. Durrett acted unreasonably in representing him. McCoy argues that it was unreasonable for Ms. Durrett to not help him unravel the connection between the offer in this case and the offer in the State Case given that the history of the negotiations involved a "global resolution" of the State Case. (ECF No 216 at 8.) First and foremost, Ms. Durrett does appear to have helped McCoy sort out the offer in this case from those in the State Case. She urged McCoy to accept the offer in this case by the July 13, 2013, deadline and advised that he talk to his state court counsel about the state's offer. When McCoy told her that he changed his mind about accepting the 15-year offer because the state would not reduce its offer, she explained that the state proceedings were separate. Moreover, Ms. Durrett's obligations as McCoy's counsel extended only to this case. She repeatedly informed McCoy that she was trying to communicate with his counsel in the

1 | State Case, that she did not have sufficient knowledge about the State Case to give him
2 | advice on whether to accept the state's offer, and that her advice was for him to accept
3 | the 15-year offer because of the risks he was facing in this case. Under the circumstances
4 | presented here, Ms. Durrett discharged her obligations to McCoy as his counsel in this
5 | case. McCoy cannot demonstrate that Ms. Durrett committed "gross error" in not helping
6 | him unravel the knot that intertwined the offer in this case with the state offer.
7 | *See Turner*, 281 F.3d at 880.

The Court finds that McCoy cannot satisfy the first prong under *Strickland.* Accordingly, the Court will not address the second prong.

## IV. CERTIFICATE OF APPEALABILITY

Before McCoy can appeal the Court's decision to deny his Motion, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22; 9th Cir. R. 22-1; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). To receive such a certificate, a petitioner must make "'a substantial showing of the denial of a constitutional right' as to each issue the petitioner seeks to appeal." *Washington*, 653 F.3d at 1059 (quoting 28 U.S.C. § 2253(c)(2), (3)). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court determines that reasonable jurists would find its reasoning debatable or wrong. Thus, the Court will grant a certificate of appealability as to count one for ineffective assistance of counsel. As indicated in the previous order (ECF No. 126), the certificate of appealability is denied as to count two.

## V. CONCLUSION

It is therefore ordered that McCoy's Motion is denied as to count one relating to ineffective assistance of counsel.

///

///

///

The Court grants a certificate of appealability on count one for ineffective assistance of counsel.

DATED THIS 14th day of April 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE